## Case No. 14,745.

UNITED STATES v. CASSEDY et al.

[2 Sumn. 582.] [1]

Circuit Court, D. Massachusetts. May Term, 1837.

SEAMEN—INDICTMENT FOR REVOLT—COMBINATION TO RESIST AUTHORITY—SUBSTITUTED MASTER—CONTRACT OF SERVICE.

1. To sustain an indictment for an endeavor to commit a revolt under the act of congress of 1835 (chapter 40, § 2 [4 Stat. 776]), a confederacy or combination must be shewn between two or more of the seamen, to refuse to do further duty on board the ship, and to resist the lawful commands of the officers.

[Cited in U. S. v. Peterson, Case No. 16,037; U. S. v. Huff, 13 Fed. 637.]

2. The contract of seamen for the voyage is not suspended or extinguished by the death, removal, or resignation of the original master; but they are bound to perform the voyage under any person, who is lawfully substituted in his stead.

[Cited in U. S. v. Nye, Case No. 15,906.]

3. If a person, substituted as master, be grossly incompetent to the duties of his station, from want of skill or bad habits, or profligate and cruel behavior, the seamen may be justified in refusing to do duty, or to remain by the ship.

[Cited in U. S. v. Nye, Case No. 15,906.]

Indictment for an endeavor to commit a revolt on board of the ship Amethyst. on the high seas, against Act 1835, c. 40. § 2. Plea, the general issue.

At the trial it appeared in evidence, that the Amethyst was an American ship, registered in New Bedford. She sailed from thence on a whaling voyage in the Pacific in August, 1836, under the command of Capt. Warren Howland. In consequence of ill-health, Capt. Howland was obliged to leave the ship at St. Helena, in January, 1837, and with the advice of the American consul at that port, he appointed the chief mate to the command for the residue of the voyage. The crew, upon receiving information of the substitution of the mate to the command, refused to do any further duty on board, although the mate was experienced. and they were urged to do so by the consul. On the next day, Capt. Howland and the consul went on board and examined the crew sep-

[1] [Reported by Charles Sumner, Esq.]

arately. The defendants [Alfred] Cassedy, Bowditch and Jenkins still persisted in their refusal; and said they did not like to proceed on the voyage, with the mate as master. They were then taken on shore, and put into prison. Two days afterwards the consul, together with two American masters, went on board to persuade the crew to go to sea. The mate, by direction of the consul, ordered the ship to be got under weigh for sea. Half of the crew refused at first; but finally all of them then on board, except the defendants Allen, King and Hopp consented. These three last were then also sent on shore, and put in prison with the others, who had been put in prison two days before. The ship afterwards proceeded to sea without them; and they were sent home in another American ship, the Octavia, for trial, and arrived at New Bedford.

Mr. Mills, Dist. Atty., for the United States.

STORY, Circuit Justice, in summing up to the jury said: Upon the facts stated in the evidence, which indeed, is not in its general bearing disputed, the question arises, whether the defendants, or any of them, are guilty of the offence charged in the indictment. And that depends upon another question, whether there was among the defendants, or any two or more of them, a common confederacy or combination to refuse to do further duty on board the ship, and to resist the lawful commands of the officers in regard to the sailing or preparations for the voyage. If there was any such confederacy or combination, or any encouragement by the defendants of each other in such acts of refusal and disobedience, then the offence, in contemplation of law, has been committed, unless some justification of the refusal and disobedience is made out. The defendants seem to have proceeded upon the ground, that they were not bound to service on board after the original master ceased to be such; and that they were not bound to serve under the mate, acting as master, under a regular substituted appointment. This is a sheer mistake of the law. The contract of seamen for the voyage is not suspended or extinguished by the original master's ceasing to be such, by death, by removal, by resignation, or otherwise. They are bound to perform the voyage under any person, who is lawfully substituted master for the voyage; for their engagement is, in substance, an engagement with the owners for the voyage, and not with a particular master, so long as he remains such. It is true, that if a person, substituted as master, is grossly incompetent to the duties of his station from want of due skill or from grossly bad habits, or from profligate and cruel behavior, that may furnish a suitable excuse for a refusal to do duty, or to remain by the ship. But such a case must be clearly made out, beyond all reasonable doubt, and it is not to be presumed, or inferred.

There is no such proof in the present case; and, therefore, it cannot be insisted on. The evidence, so far as it goes, is decidedly favorable to the competency, skill, and good character of the mate. The question then resolves itself into a mere question of fact, upon which the jury will pass their opinion.

Verdict against all the defendants, guilty.